Sheila VINSON, Plaintiff-Appellant,

v.

CAMPBELL COUNTY FISCAL COURT;
Nickie Hornsby; and William Stoll,
Defendants-Appellees.

No. 86–5732.

United States Court of Appeals,
Sixth Circuit.

Argued April 24, 1987.

Decided June 4, 1987.

Steven L. Schiller, Newport, Ky., for plaintiff-appellant.

Donald L. Stepner, Covington, Ky., James Kruer, argued, Stephen A. Bailey, Lindhorst & Dreidame, Cincinnati, Ohio, for defendants-appellees.

Before MARTIN and MILBURN, Circuit Judges, and ALDRICH, District Judge *.

* The Honorable Ann Aldrich, United States District Judge, Northern District of Ohio, sitting by designation.

MILBURN, Circuit Judge.

Plaintiff-appellant Sheila Vinson appeals from the district court's entry of summary judgment in favor of defendants-appellees Nickie Hornsby and the Campbell County Fiscal Court in this action brought pursuant to 42 U.S.C. § 1983 alleging violations of procedural and substantive due process. For the reasons that follow, we reverse.

## I.

The record, read in the light most favorable to plaintiff, discloses the following facts. On March 22, 1982, the Director of Pupil Personnel of the Campbell County School System filed a truancy complaint with the Campbell County Juvenile Services Department stating that plaintiff's children, Elizabeth and Michelle Vinson, were truant from their respective schools. Eight days later, Ms. Hornsby, a Campbell County Juvenile Services Probation Officer, visited an apartment in Highland Heights, Kentucky, where plaintiff was living with a friend. Ms. Hornsby, unable to contact plaintiff by telephone, removed the children from the custody of plaintiff's friend and transported them to the Campbell County Juvenile Services Office.

Plaintiff arrived at the Campbell County Juvenile Services Office later that afternoon and met with Ms. Hornsby and Tom Calme, the Director of Juvenile Services. Ms. Hornsby informed plaintiff that her presence was required at a hearing to be held on May 5, 1982, regarding the children's failure to attend school. Plaintiff responded that she could not attend the hearing because she was being evicted from her apartment, and that she planned to move to Ohio where she had previously resided. Ms. Hornsby then went next door to the Juvenile Court Clerk's Office to procure a summons requiring plaintiff's appearance at the May 5 hearing.

Janet Duty, the Juvenile Court Clerk, informed Ms. Hornsby that a summons could not be issued "without a petition being filed." Ms. Duty explained that the "procedure up to that point" was to "have a petition filed, then a summons issued." Ms. Duty did, however, issue the summons upon the condition that the petition be filed immediately. Although aware of the possible invalidity of the summons, Ms. Hornsby served the summons on plaintiff, commanding her appearance before the Campbell District Court regarding charges that her two children were neglected or abused. Plaintiff acknowledged her receipt of the summons by personally signing it.

On May 4, 1982, Ms. Hornsby filed an "Affidavit and Request For Emergency Custody For Dependent, Neglected, Or Abused Children" in the Campbell District Court. The affidavit reflected Hornsby's knowledge that plaintiff was being evicted from her apartment and that she was moving to Ohio. Plaintiff was not, however, afforded any notice that the custody of her children would be sought at the May 5 hearing.

Plaintiff failed to appear at the May 5 hearing and the court issued a bench warrant for her arrest. The court also entered an Emergency Custody Order, placing custody of plaintiff's children in the Kentucky Department of Human Resources.

On May 11, 1982, Ms. Hornsby, accompanied by William Stoll, requested a copy of the Emergency Custody Order from Ms. Duty, stating that she intended to retrieve the children from Ohio. Ms. Duty reminded Ms. Hornsby that she "could not go directly to any other police department outside of [Kentucky]" and that she "had to go through a procedure called the Interstate Compact." Ms. Duty explained that retrieval of the children had to be handled through the administrator of the Interstate Compact who would contact the Ohio authorities and explained that if the return was "involuntary," a hearing would be held in Ohio. Ms. Hornsby disregarded Ms. Duty's advice and proceeded to Ohio.

Upon her arrival in Ohio, Ms. Hornsby obtained the assistance of a police officer but did not contact the Ohio juvenile authorities nor any Ohio court. Ms. Hornsby located plaintiff, presented the Emergency Custody Order, and demanded custody of the children. After gaining custody of the children, Ms. Hornsby returned to the

Campbell County Juvenile Services Offices. Upon plaintiff's return to Kentucky, she was arrested for failing to appear at the May 5 hearing and served approximately ten days in jail. At a subsequent hearing, the Campbell District Court found that plaintiff's children were neglected and that it would be in the best interests of the children if they were removed from plaintiff's custody. The court also dismissed the charges arising out of plaintiff's failure to appear in response to the summons.

## II. FALSE IMPRISONMENT

### A. *Collateral Estoppel*

Plaintiff argues that because the Kentucky state court dismissed, without a hearing, the failure to appear charge arising from the allegedly invalid summons, the magistrate[1] erred in finding plaintiff's false imprisonment claim barred by collateral estoppel. The magistrate, characterizing plaintiff's claim "as one of malicious prosecution and/or abuse of process," reasoned that since plaintiff "had every opportunity to litigate the issue of her allegedly false arrest and imprisonment and/or malicious prosecution and/or abuse of process due to actions of defendant Hornsby at the state court hearing ... she should be collaterally estopped from asserting same in the present section 1983 action."

■ A state court judgment must be given the same preclusive effect in federal court that it would be given in the courts of the rendering state. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984); *City of Canton v. Maynard,* 766 F.2d 236, 237 (6th Cir.1985) (per curiam); *Fellowship of Christ Church v. Thorburn,* 758 F.2d 1140, 1144 (6th Cir. 1985) (per curiam). This principle applies to civil rights actions under section 1983 with respect to issues actually litigated (collateral estoppel or issue preclusion) and issues which could have been but were not litigated in the state court proceeding (res judicata or claim preclusion). *Migra,* 465

U.S. at 81–85, 104 S.Ct. at 896–98; *Maynard,* 766 F.2d at 238. Giving preclusive effect to state court judgments is, however, inappropriate "where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Allen v. McCurry,* 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980); *see also Haring v. Prosise,* 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983); *Thorburn,* 758 F.2d at 1144.

■ The magistrate obviously confused the doctrines of res judicata and collateral estoppel. Under res judicata or claim preclusion, a final judgment on the merits bars further claims by the parties on the same cause of action. *See Cream Top Creamery v. Dean Milk Co.,* 383 F.2d 358, 361 (6th Cir.1967); *Newman v. Newman,* 451 S.W.2d 417, 419 (Ky.1970); *BTC Leasing, Inc. v. Martin,* 685 S.W.2d 191, 197 (Ky. App.1984). Res judicata or claim preclusion is not applicable in the present case because plaintiff's section 1983 action is not the same cause of action as the state's criminal case against her. *See Slayton v. Willingham,* 726 F.2d 631, 633 (10th Cir. 1984) (per curiam); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4474, at 748 (1981). Under collateral estoppel or issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving the parties to the prior litigation. *Cream Top Creamery,* 383 F.2d at 362; *Whittenberg Engineering & Construction Co. v. Liberty Mutual Insurance Co.,* 390 S.W.2d 877, 883 (Ky.1965). Collateral estoppel or issue preclusion is not applicable in the present case because neither the validity of the summons nor the legality of the arrest was litigated or decided in the prior state court proceeding. *See Slayton,* 726 F.2d at 634.

### B. *Due Process*

Plaintiff argues that the magistrate erred by granting summary judgment in

---

1. After the district court entered partial summary judgment for defendants, the case was referred to the magistrate pursuant to 28 U.S.C. § 636(c).

favor of defendants on plaintiff's procedural and substantive due process claims arising out of her alleged false imprisonment. The magistrate viewed plaintiff's claim against Ms. Hornsby as merely procedural and analyzed the claim under the framework announced in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The magistrate rejected plaintiff's argument that the "failure to institute an established state procedure is tantamount to an established procedure of inadequate training" and found that "the state could not have anticipated Hornsby's actions." Further, the magistrate determined that plaintiff could have filed an action for false imprisonment or abuse of process in state court and, therefore, dismissed the claim against Ms. Hornsby.

■ Dismissal of plaintiff's claim against Ms. Hornsby was improper to the extent the claim sought relief for violations of substantive rather than procedural due process rights. The Court's decision in *Parratt* merely determined when a state's postdeprivation remedies are inadequate to protect a victim's procedural due process rights. When a violation of substantive due process rights is claimed, the existence of state postdeprivation remedies has no bearing on whether a cause of action exists. *Wilson v. Beebe*, 770 F.2d 578, 585–86 (6th Cir.1985) (en banc); *see also McClary v. O'Hare*, 786 F.2d 83, 86 n. 3 (2d Cir. 1986); *Robins v. Harum*, 773 F.2d 1004, 1009 (9th Cir.1985); *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir.1985).

Plaintiff contends that her claim against Ms. Hornsby constitutes a substantive due process violation because Ms. Hornsby intentionally and maliciously deprived her of a liberty interest protected by the federal constitution. Plaintiff's contention requires this court to determine whether plaintiff was deprived of a protected liberty interest and whether the deprivation, if any, was the result of an egregious abuse of governmental power sufficient to state a substantive due process violation. *Nishiyama v. Dickson County*, 814 F.2d 277, 282 (6th Cir.1987); *McClary*, 786 F.2d at 88–89; *Rymer v. Douglas County*, 764 F.2d 796, 801 (11th Cir.1985) (per curiam); *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1378–79 (10th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). Plaintiff clearly had a protected liberty interest in freedom from bodily restraint and freedom of bodily movement. *Ingraham v. Wright*, 430 U.S. 651, 673–74, 97 S.Ct. 1401, 1413–14, 51 L.Ed.2d 711 (1977); *Johnson ex rel. Johnson v. Brelje*, 701 F.2d 1201, 1208 (7th Cir.1983).

■ However, Ms. Hornsby's procurement of the technically invalid summons does not, in our view, constitute an egregious abuse of governmental power sufficient to state a substantive due process violation. Ms. Duty, the Juvenile Court Clerk, deposed that plaintiff's procurement of the summons was motivated by a desire to insure that plaintiff would appear at a hearing regarding the children's absence from school. According to Ms. Duty, Ms. Hornsby related that she needed to get plaintiff in for a hearing and that she had previously had trouble getting in touch with plaintiff. Ms. Duty issued the summons only after Ms. Hornsby agreed to file a petition later that afternoon, and Ms. Hornsby deposed that she filed the petition that same day. The record simply does not support plaintiff's assertion that Ms. Hornsby's procurement of the summons was motivated by malice or that Ms. Hornsby intentionally abused her state authority in order to injure plaintiff.[2]

Because plaintiff's claim does not state a substantive due process violation, the claim must be analyzed under *Parratt*. The Court held in *Parratt* that when a state actor negligently deprives an individual of

---

**2.** Plaintiff further contends that her claim against Ms. Hornsby constitutes a substantive due process violation because she was deprived of a "liberty interest" recognized in the due process clause of the Fifth Amendment. Plaintiff's asserted Fifth Amendment claim is, however, merely duplicative of her Fourteenth Amendment claim. Because plaintiff's claim is nothing more than due process *"simpliciter,"* the claim is procedural and must be analyzed under *Parratt*. *See Wilson*, 770 F.2d at 585.

a protected interest through a "random and unauthorized act," the state's provision of an adequate postdeprivation remedy satisfies the constitutional requirement of procedural due process. 451 U.S. at 541–44, 101 S.Ct. at 1916–17. The Court reasoned that when "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur," it is, in most cases, "not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id.* at 541, 101 S.Ct. at 1916. The "controlling inquiry," in determining the applicability of *Parratt,* "is solely whether the state is in a position to provide for predeprivation process." *Hudson v. Palmer,* 468 U.S. 517, 534, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984); *see also Rittenhouse v. DeKalb County,* 764 F.2d 1451, 1455 (11th Cir.1985) (the central question in determining applicability of *Parratt* is the feasibility of predeprivation procedures); *Augustine v. Doe,* 740 F.2d 322, 327 (5th Cir.1984) (the controlling question in determining the applicability of *Parratt* is whether state is in position to provide predeprivation process).

Plaintiff contends that *Parratt* is inapplicable because defendant Campbell County Fiscal Court "had an established state procedure, a custom or practice of attempting to bypass the procedural safeguards established by the juvenile court and administered by the juvenile court clerk." Plaintiff fails to distinguish "policy or custom" as the terms were used in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), from "established state procedure" as the phrase was used in *Parratt.* Under *Monell,* "the relevant inquiry concerns whether an employee's misconduct is sufficiently connected to a 'policy or custom' to warrant imposition of liability at the government level. By contrast, 'established state procedure' in *Parratt* refers to the mechanism that effects a deprivation or contributes to cause a deprivation [and] the relevant inquiry in this context is whether predepriva-

tion process is feasible....." *Rittenhouse,* 764 F.2d at 1456 n. 5.

■ Plaintiff has alleged only that she was deprived of a liberty interest because established state procedures were not followed, not that the established state procedure effected a deprivation. The state could not have predicted that the established procedure would not be followed and was in no position to provide predeprivation process because Ms. Hornsby's procurement of the allegedly invalid summons, which resulted in the alleged false imprisonment, was a random and unauthorized act. "[W]here the wrongful act is not sanctioned by any established procedure, and [where] state law provides a means for the plaintiff to be made whole for his loss occasioned by the wrongful act, there has been no denial of procedural due process because the state action is not necessarily complete until the termination of the state's postdeprivation remedy." *Yates v. Jamison,* 782 F.2d 1182, 1184 (4th Cir. 1986). Therefore, the presence of an adequate postdeprivation remedy[3] required summary judgment on plaintiff's false imprisonment claim against Ms. Hornsby.

The magistrate also granted summary judgment in favor of the Campbell County Fiscal Court, reasoning that plaintiff's allegation that the Campbell County Fiscal Court was "grossly negligent" in failing to train or supervise its personnel was insufficient to establish liability. The magistrate interpreted the Supreme Court's decisions in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), as requiring a showing of more than gross negligence in order to trigger due process protections. The district court's reliance on *Daniels* and *Davidson* is obviously flawed since the Court in *Daniels* expressly reserved the question of whether gross negligence will suffice to trigger due process protections. 106 S.Ct. at 667 n. 3. Moreover, this court expressly held in *Nishiyama* that gross

---

3. Plaintiff does not argue that she does not have an adequate state remedy against Ms. Hornsby

for any injury flowing from Ms. Hornsby's procurement of the allegedly invalid summons.

negligence is sufficient to trigger due process protections. 814 F.2d at 282.

■ But regardless of *Daniels* and *Davidson,* the Campbell County Fiscal Court may not be held liable absent proof that Ms. Hornsby's conduct implemented or executed a "policy" of the Campbell County Fiscal Court or that Ms. Hornsby acted pursuant to a "custom" even though the custom had not been formally approved by the Campbell County Fiscal Court. *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Proof of a single, isolated incident of misconduct by a "nonpolicymaking" employee is not sufficient to impose liability under *Monell*[4] unless training or supervision was "so reckless or grossly negligent" that misconduct was "almost inevitable" or "substantially certain to result." *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *see also Patzner v. Burkett,* 779 F.2d 1363, 1367 (8th Cir. 1985); *Rymer v. Davis,* 775 F.2d 756, 757 (6th Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987). Plaintiff has produced no evidence of other incidents where the procedures for obtaining a valid summons were violated and no evidence that Ms. Hornsby's alleged violation of the procedure was inevitable because of inadequate training or supervision regarding these procedures. Therefore, the magistrate's entry of summary judgment in favor of the Campbell County Fiscal Court on plaintiff's false imprisonment claim was proper.[5]

## III. DEPRIVATION OF CUSTODY

### A. *Due Process*

Plaintiff argues that the magistrate erroneously dismissed plaintiff's substantive due process claims against Ms. Hornsby and the Campbell County Fiscal Court arising out of the removal of her children from her custody.[6] The magistrate did not discuss plaintiff's claim against Ms. Hornsby based on the removal of the children from plaintiff's custody, but dismissed the entire action after finding that liability could not be imposed against the Campbell County Fiscal Court. The district court had previously granted summary judgment for defendants to the extent plaintiff's claims attacked "the validity or jurisdiction of the Campbell District Court's Juvenile Division, Emergency Custody Decree and Temporary Placement Order." The district court had declined, however, to grant summary judgment for defendants on plaintiff's claim that Ms. Hornsby, acting pursuant to a "policy" or "custom" of the Campbell County Fiscal Court, unlawfully deprived her of a liberty interest in the physical custody of her children.

■ Plaintiff contends that her claim against Ms. Hornsby constitutes a substantive due process violation because Ms. Hornsby intentionally and maliciously deprived her of a protected liberty interest. Clearly, plaintiff had a "fundamental liberty interest" in the care, custody and management of her children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); *see also Doe v. Staples,* 706 F.2d 985, 988–89 (6th Cir. 1983), *cert. denied,* 465 U.S. 1033, 104 S.Ct. 1301, 79 L.Ed.2d 701 (1984). Plaintiff's interest in the custody of her children did not evaporate merely because she had temporarily lost their legal custody. *See Santosky,* 455 U.S. at 753, 102 S.Ct. at 1394; *Polovchak v. Meese,* 774 F.2d 731, 735 (7th Cir.1985); *Staples,* 706 F.2d at 990. Plaintiff's interest in the physical custody of her children could not be terminated without compliance with the requirements of due

---

**4.** The present case is distinguishable from *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), which involved a single decision by a municipal policymaker.

**5.** Plaintiff argues that, due to the Kentucky state law of sovereign immunity, she does not have an adequate state remedy against the Campbell County Fiscal Court. This resolution, however, renders it unnecessary for us to reach that issue.

**6.** Plaintiff does not argue and we do not consider whether plaintiff's claim states a procedural due process violation. Plaintiff emphatically states in her brief that the "kidnapping claim is a substantive, not a procedural due process claim."

process. *See Polovchak,* 774 F.2d at 735–36; *Staples,* 706 F.2d at 990.

 Ms. Hornsby's alleged unlawful deprivation of plaintiff's liberty interest in the custody of her children was, in our view, an egregious abuse of governmental power sufficient to state a substantive due process violation. The substantive component of the due process clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them [and thereby] serves to prevent governmental power from being 'used for purposes of oppression.'" *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 277, 15 L.Ed. 372 (1856)); *see also Nishiyama,* 814 F.2d at 281; *McClary,* 786 F.2d at 88. Ms. Duty, the Juvenile Court Clerk, deposed that when Ms. Hornsby was informed that she could not "go and get the children herself," Ms. Hornsby responded that she was going to get them anyway because plaintiff "had messed with the wrong person when [she] took the children out of the state." Ms. Duty further deposed that Ms. Hornsby displayed animosity toward plaintiff, stating that she did not "like to be made a fool of." Ms. Duty's testimony supports plaintiff's assertion that Ms. Hornsby maliciously and intentionally abused her state authority in order to injure plaintiff.

Plaintiff further contends that the Campbell County Fiscal Court should be held liable here because it had a custom or policy of inadequately training and supervising its employees regarding interstate custody jurisdiction. The Campbell County Fiscal Court may be held liable if its training and supervision were "so reckless or grossly negligent" that plaintiff's misconduct was "almost inevitable" or "substantially certain to result." *Hays,* 668 F.2d at 874; *see also Rymer,* 775 F.2d at 757. The district court, prior to the reference to the magistrate, expressly found that there were disputed issues of fact which precluded the granting of summary judgment on the issue of whether there was a custom or policy on the part of the Campbell County Fiscal Court not to adequately train or supervise its employees regarding interstate custody jurisdiction.

The district court's determination finds ample support in the record. Tom Calme, Director of Campbell County Juvenile Services and Ms. Hornsby's supervisor, deposed that on at least one other occasion, two of his officers had retrieved a child from Ohio without contacting the Ohio juvenile authorities, and that he did not voice any concerns or objections. Mr. Calme further deposed that when there is an emergency order to pick up a child and the child happens to be in another state, it was the duty of his officers to pick up the child. Moreover, Ms. Hornsby deposed that she had not read that section of the procedures applicable to interstate issues, and that no one had even talked with her about the nature of these procedures. Therefore, the magistrate's entry of summary judgment in favor of defendants on plaintiff's substantive due process claim was improper.

### IV.

Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED for proceedings not inconsistent with this opinion.