Gonzalo **FERNOS–LOPEZ**,
Petitioner, Appellant,

v.

Eloisa **FIGARELLA LOPEZ**,
Respondent, Appellee.

No. 90–1714.

United States Court of Appeals,
First Circuit.

Submitted Nov. 30, 1990.

Decided March 27, 1991.

Rehearing Denied May 7, 1991.

---

Gonzalo Fernos–Lopez, on brief, pro se.

Luis Garcia–Carrasquillo, San Juan, P.R., on brief, for respondent, appellee.

Before BREYER, Chief Judge, CAMPBELL and SELYA, Circuit Judges.

PER CURIAM.

Gonzalo Fernos–Lopez ("petitioner"), having been adjudged in civil contempt and imprisoned by the superior court of Puerto Rico for failure to pay alimony as ordered, appeals *pro se* from a judgment dismissing his petition for a writ of habeas corpus. The district court disposed of the petition summarily for lack of jurisdiction. As no certificate of probable cause was granted, we treat the instant appeal as an application for same. While we disagree with the rationale invoked by the district court, we agree for other reasons that jurisdiction was lacking below. We therefore deny the application for a certificate of probable cause.

I.

In 1959, following seventeen years of marriage, petitioner was divorced from Eloisa Figarella–Lopez. Custody of their children was granted to Figarella, and their sizeable estate was equally divided; no alimony was awarded. Twenty-seven years later, in February 1986, Figarella filed for alimony in superior court. She obtained an award the following year of $125 per month. On April 7, 1989, apparently after finding that petitioner had fraudulently concealed assets, the superior court increased the award to $580 per month, retroactive to February 1986. Petitioner, disputing the determination of fraud and claiming indigency, failed to make the alimony payments as ordered, and in March 1990 Figarella moved for his arrest and imprisonment. After conducting several hearings in April and May, the superior court on May 7, 1990 ordered petitioner to make an initial $10,000 payment and to agree to a schedule of payments for the balance. The court added that, should petitioner fail to do so by May 31, 1990, it would order his arrest and imprisonment "without further summons or hearing" upon the request of Figarella. Petitioner again failed to comply. An order for petitioner's arrest was accordingly issued "on an uncertain date between May 31, 1990, and June 12, 1990" (Petitioner's brief, at 5), but was then suspended on June 12 pending a hearing scheduled for June 29. On that date, petitioner was in fact arrested and incarcerated for civil contempt. Yet his prison stay proved to be short-lived; he contracted pneumonia while in custody and was released on July 13, 1990, with Figarella's express acquiescence. Petitioner argues that the prospect of his being reincarcerated remains a viable one, however, as he continues to lack the resources to comply with the order, and as Figarella has promised to renew her request for his imprisonment should the alimony payments not be forthcoming.

Petitioner fervidly challenged each of the superior court rulings. Among other steps, he sought review of each of the orders in the Puerto Rico Supreme Court, without success. He also sought to appeal the 1989 order to the United States Supreme Court, which denied certiorari on March 19, 1990. On June 7, 1990, some three weeks before his incarceration, he filed the instant petition for habeas corpus, naming Figarella as respondent. As grounds for invoking habeas jurisdiction,

he argued (1) that the Puerto Rico alimony statute violated the 13th and 14th amendments by creating an imprescriptible, lifelong right to alimony, *see* 31 L.P.R.A. § 385; *Suria v. Fernandez Negron*, 101 P.R.Dec. 316 (1973); and (2) that the proceedings in superior court denied him due process, particularly by depriving him of the opportunity to present evidence in opposition to the alimony request. On June 25, 1990, the district court summarily granted respondent's motion to dismiss for lack of jurisdiction, and judgment entered on June 28, the day before petitioner was incarcerated. Petitioner moved for a more detailed explication of the court's rationale; the court responded on July 3 that the grounds were set out in respondent's motion to dismiss. Finally, on June 29, upon being taken into custody, petitioner filed a second petition for habeas corpus, requesting his release pending the court's ruling on his motion for further explication; the court dismissed this petition on July 3, 1990, also for lack of jurisdiction. This appeal followed.

## II.

■ Neither of the grounds cited by respondent in her motion, and relied on by the district court, provides a basis for the dismissal here. Respondent first suggested that the same arguments advanced in the instant habeas petition had been rejected by the United States Supreme Court when it denied certiorari on March 19, 1990. The Court's denial of a writ of certiorari, of course, "imports no expression of opinion upon the merits of the case." *United States v. Carver*, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361 (1923); *accord, e.g., Teague v. Lane*, 489 U.S. 288, 296, 109 S.Ct. 1060, 1067, 103 L.Ed.2d 334 (1989).

More to the point, respondent argued that the district court lacked (or should abstain from exercising) jurisdiction because of the "domestic relations exception" to federal court jurisdiction. Ever since the pronouncement in *Barber v. Barber*, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1859), "disclaim[ing] altogether any juris-

diction in the courts of the United States upon the subject of divorce, or for the allowance of alimony," federal courts have declined to adjudicate actions for divorce, alimony, child support, child custody, and other "domestic relations" matters. *See, e.g., Gonzalez Canevero v. Rexach*, 793 F.2d 417, 418 (1st Cir.1986) (per curiam); *Sutter v. Pitts*, 639 F.2d 842, 843–44 (1st Cir.1981); *Armstrong v. Armstrong*, 508 F.2d 348, 349–50 (1st Cir.1974). Among the considerations underlying this exception are the strong state interest in domestic relations, the relative expertise of state courts, their ability to provide ongoing supervision, the availability there of professional support services, and the undesirability of potentially incompatible federal and state decrees in this area. *See, e.g., Ingram v. Hayes*, 866 F.2d 368, 369–70 (11th Cir.1988) (per curiam); *DiRuggiero v. Rodgers*, 743 F.2d 1009, 1019–1020 (3d Cir. 1984); 13B Wright & Miller, Federal Practice and Procedure § 3609, at 461 (1984). The domestic relations exception, however, is typically described as an "exception to diversity jurisdiction," *Sutter*, 639 F.2d at 843, and some courts have explicitly restricted it to diversity cases. *See, e.g., Ingram*, 866 F.2d at 370–72 (discussing cases); *Agg v. Flanagan*, 855 F.2d 336, 339 (6th Cir.1988); *Flood v. Braaten*, 727 F.2d 303, 308 (3d Cir.1984) ("as a jurisdictional bar, the domestic relations exception does not apply to cases arising under the Constitution or laws of the United States"). Other courts have deemed the exception applicable when federal-question jurisdiction exists, but then only when the federal court would become "deeply involve[d] in adjudicating domestic matters," *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986), *aff'd*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), or "enmeshed in factual disputes." *Hernstadt v. Hernstadt*, 373 F.2d 316, 318 (2d Cir.1967). *See Ingram*, 866 F.2d at 371–72. *Cf. Friends of Children, Inc. v. Matava*, 766 F.2d 35, 36–37 (1st Cir.1985) (abstention in § 1983 action warranted in part because "family law" issues involved).

■ However construed, the domestic relations exception is plainly inapplicable

here. This is not a diversity case. And addressing the merits of petitioner's claims would not require delving into the parties' domestic affairs, or otherwise implicate the prudential concerns noted above. His attack on the validity of the alimony statute is akin to other constitutional challenges entertained by federal courts in the domestic relations context. *See, e.g., Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (due process challenge to court fees imposed on indigents seeking to file for divorce); *Agg*, 855 F.2d at 339 (due process challenge to state method for determining and enforcing child support). And as petitioner notes, his challenge to the fairness of the court proceedings resulting in his incarceration is a procedural claim having scant connection to the substance of the underlying alimony dispute. *See, e.g., Ingram*, 866 F.2d at 372; *Hooks v. Hooks*, 771 F.2d 935, 942 (6th Cir.1985). We therefore conclude that the domestic relations exception poses no jurisdictional bar.

■ A related restriction exists with respect to a federal court's habeas jurisdiction. To the extent that the district court meant to invoke it (even though not mentioned by respondent), we add that such restriction is likewise inapplicable. In *Lehman v. Lycoming County Children's Services*, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982), the Court held that habeas jurisdiction was lacking to entertain a collateral attack on a state decree awarding custody of petitioner's natural children to foster parents. *Accord, e.g., Hemon v. Office of Public Guardian*, 878 F.2d 13 (1st Cir.1989) (per curiam) (challenge to guardianship of adult); *Sylvander v. New England Home For Little Wanderers*, 584 F.2d 1103 (1st Cir.1978) (challenge to child custody ruling). While some of the same concerns underlying the domestic relations exception support this limitation on habeas jurisdiction as well, *see, e.g., id.* at 1112 (noting "long history of state predominance and federal deferral in family law matters"), the two are quite distinct. *See Flood*, 727 F.2d at 308 n. 18 (domestic relations exception "is entirely different from [issue] resolved in *Lehman*"). In *Lehman*, the Court simply declined to extend to child custody orders the "in custody" requirement in 28 U.S.C. §§ 2241 and 2254. *See Lehman*, 458 U.S. at 508–12, 102 S.Ct. at 3235–37; *Sylvander*, 584 F.2d at 1109–11. However, a person incarcerated for civil contempt, even in the domestic relations context, is obviously in "custody," in the traditional sense, for the purposes of invoking habeas jurisdiction. *See, e.g., Leonard v. Hammond*, 804 F.2d 838, 840 (4th Cir.1986) (indigents, imprisoned for civil contempt for failure to pay child support, allege right to appointed counsel; since they are challenging constitutionality of confinement and seeking release, "habeas corpus is the exclusive remedy"); *Ridgway v. Baker*, 720 F.2d 1409 (5th Cir.1983) (habeas granted to civil contemnor imprisoned for nonsupport).

### III.

■ While we reject the reasons cited below for the dismissal, the instant petition ends up faltering in another respect on the "custody" requirement just mentioned. Custody, "the essential statutory ingredient for initial jurisdiction," *United States v. Michaud*, 901 F.2d 5, 6 (1st Cir.1990) (per curiam), is determined as of the date a habeas petition is first filed. *Carafas v. LaVallee*, 391 U.S. 234, 238–40, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968); *Tinder v. Paula*, 725 F.2d 801, 803 (1st Cir. 1984). Petitioner here filed his petition on June 7, 1990, but was not incarcerated until June 29; indeed, judgment entered dismissing his petition the day prior to his imprisonment. Petitioner argues that, in light of his alleged indigency and the court proceedings that had theretofore transpired, his arrest and incarceration were both inevitable and imminent as of June 7, 1990, such that he was in effect already in custody. We cannot agree that the custody requirement was satisfied under these circumstances.

The caselaw does contain various intimations that imminent custody might provide a basis for habeas jurisdiction, but each proves distinguishable. Petitioner points to *Roba v. United States*, 604 F.2d 215, 219

(2d Cir.1979), where the court stated: "Petitioner need not wait until the marshals physically lay hands on him; he is entitled now to challenge the allegedly unlawful conditions of his imminent custody." The petitioner there, having been arrested in New York on a California bench warrant, sought to avoid being transported across country pursuant to a removal warrant while allegedly suffering from a life-threatening heart ailment; the physical act of transfer was the "imminent custody" he was challenging. No such exigency existed in the instant case, nor was petitioner under arrest on the date his petition was filed.

In *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), the Court found the custody requirement satisfied where a criminal defendant, after being sentenced to a one-year jail term, had obtained a stay of execution of his sentence and been released on his own recognizance while pursuing post-conviction relief in state and federal court. The Court first observed that defendant, although on release, remained "subject to restraints 'not shared by the public generally,'" including being subject to arrest for failure to appear at all times and places as ordered. *Id.* at 351, 93 S.Ct. at 1574, *quoting Jones v. Cunningham*, 371 U.S. 236, 240, 83 S.Ct. 373, 375, 9 L.Ed.2d 285 (1963); *accord Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 300–02, 104 S.Ct. 1805, 1809–10, 80 L.Ed.2d 311 (1984). Second, noting that defendant remained at large only by virtue of a judicial stay, it stated:

> The State has emphatically indicated its determination to put him behind bars, and the State has taken every possible step to secure that result. His incarceration is not, in other words, a speculative possibility that depends on a number of contingencies over which he has no control. This is not a case where the unfolding of events may render the entire controversy academic.

411 U.S. at 351–52, 93 S.Ct. at 1575. A finding that defendant was not in custody under these circumstances "would do no more than postpone this habeas corpus action until petitioner had begun service of his sentence." *Id.* at 352, 93 S.Ct. at 1575.

Neither of the considerations cited in *Hensley* is directly applicable here. Petitioner was not subject to supervisory control or other restraints prior to his incarceration. The only possible source of restraint was the arrest warrant which was pending at some point in early June. While the caselaw suggests that being subject to immediate arrest pursuant to an arrest warrant does not constitute custody, *see, e.g., Sevier v. Turner*, 742 F.2d 262, 269 n. 7 (6th Cir.1984); *Spring v. Caldwell*, 692 F.2d 994, 996–99 (5th Cir.1982), we need not decide that issue. It is not at all clear that the warrant was issued prior to June 7, 1990—petitioner states only that it issued at some point between May 31 and June 12—and it was in any event suspended on June 12. Petitioner apparently did not even learn of the warrant until after it had been suspended. As far as appears from the record, therefore, petitioner's freedom of movement was not in any way curtailed either while the arrest warrant was pending, or thereafter up until the hearing on June 29.

Nor can we say (assuming arguendo that the second *Hensley* factor can provide an independent basis for a finding of custody) that petitioner's incarceration was both imminent and inevitable when he filed his petition on June 7, 1990. This is not a case where execution of a criminal sentence of imprisonment was temporarily postponed by means of a judicial stay, as in *Hensley*. Petitioner had not yet been sentenced at all. The prospect of his being incarcerated, while perhaps more than a "speculative possibility" as of June 7, nonetheless was dependent on "a number of contingencies" which potentially could have "render[ed] the entire controversy academic," 411 U.S. at 352, 93 S.Ct. at 1575—in particular, Figarella's insistence on continuing to prosecute the matter, and the superior court's determination that imprisonment was warranted. His continued inability to satisfy the alimony award might perhaps also be relevant in this regard. *But cf. Spring*, 692 F.2d at 998, 999 n. 6 (finding lack of custody where arrest warrant pending for

civil contempt for "willful refusal" to pay criminal fine, but noting that different result might obtain in "cases of indigency").

We therefore conclude that petitioner was not in custody at the time his habeas petition was filed—a conclusion that is only reinforced by the fact that petitioner was constrained to name his ex-wife as respondent. *See* 28 U.S.C. § 2242 (application for writ of habeas corpus shall "name ... the person who has custody over" applicant); *id.* § 2243 ("The writ ... shall be directed to the person having custody of the person detained"). And the fact that petitioner filed a second habeas petition upon being incarcerated on June 29 does not call for a different result. That petition was filed after judgment had been entered. The relief there sought was limited: petitioner asked only to be released pending determination by the district court of his motion for further explication. When that motion was decided on July 3, 1990, this petition technically became moot. And petitioner in his notice of appeal seeks review only of the June 28 judgment.

In dismissing the appeal, we express no view on the merits of petitioner's constitutional claims. Petitioner of course remains free to file a subsequent petition for habeas corpus should he again be incarcerated.

The application for a certificate of probable cause is *denied.* *See* 28 U.S.C. § 2253; Fed.R.App.P. 22(b).