MacFarlane v. Smith                    CV-96-38-SD    11/27/96 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


James M. MacFarlane


      v.                              Civil No. 96-38-SD


Peter William Smith;
Jack P. Crisp, Jr.;
Beryl Rich


O R D E R

     This civil rights action arises out of the civil arrest of
plaintiff James M. MacFarlane following his failure to pay
alimony as ordered by a state court divorce decree.  Presently
before the court are separate motions filed by defendants Judge
Peter Smith and Attorney Jack Crisp to dismiss the complaint
under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a
claim upon which relief can be granted.  Plaintiff objects to
both motions.


Facts

     Plaintiff MacFarlane was involved in state court divorce
proceedings against his ex-wife, defendant Beryl Rich.  Defendant
Smith presided as a state court justice.

At some point during the proceedings, plaintiff perceived partiality shown by the presiding judge, defendant Smith, in favor of Rich.  In response, plaintiff filed motions for the recusal of Judge Smith, which were denied.  In addition, plaintiff began to speak out against Judge Smith, distributing thousands of embossed pencils with the legend "Kangaroo Court - 'Judge' Peter Smith" printed on them.

The state court's final Decree of Divorce included an alimony monetary award in favor of Rich against plaintiff MacFarlane.  After a period during which MacFarlane failed to discharge his obligation to pay, Jack Crisp, Rich's attorney and another defendant herein, petitioned the court to issue a Civil Arrest Order, or capias, to secure payment of the debt.  Judge Smith issued the capias, and plaintiff MacFarlane was subsequently arrested.  The next day, bail was set in the amount that represented MacFarlane's alimony obligations under the Decree of Divorce.  Approximately ten days later, MacFarlane made bail.

MacFarlane brings this action against Attorney Crisp and Judge Smith under 42 U.S.C. § 1983 for violation of his constitutional rights.  Plaintiff claims violations of (1) the Due Process Clause of the Fourteenth Amendment; (2) the Fourth Amendment's prohibition against unreasonable seizures; and (3)

the First Amendment.

Discussion

## 1. Rule 12(b)(6) Standard

To resolve defendants' Rule 12(b)(6) motion, the court must "take all well-pleaded facts as true," Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996), and extend the plaintiff "every reasonable inference in his favor." Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir. 1993) (citing Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992)). A Rule 12(b)(6) dismissal is appropriate "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

## 2. Jack Crisp's Motion to Dismiss

Section 1983 provides a federal cause of action to redress violations of the Constitution or other federal laws. Assuming, arguendo, that plaintiff can make the predicate showing of a constitutional violation on these facts, the question becomes, against whom may he seek redress in federal court for civil

3

damages under section 1983?  The section 1983 cause of action only runs against persons acting under color of law who deprive another of constitutional rights.  Generally, only formal agents of the state are deemed to act under color of law.  "Private actors" are not amenable to a section 1983 action, and those with grievances against them must seek justice under common law.  Nonetheless, "private actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of 1983."  Roche v. John Hancock Mutual Life Insurance Co., 81 F.3d 249, 253-54 (1st Cir. 1996).

The conduct of a private actor is treated as state action redressable under section 1983 only if the state is sufficiently linked to that conduct.

The Supreme Court in Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), held that the state is sufficiently linked to private conduct when the private actor and state agents are co-participants in a joint action.

> Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State.  It is enough that he is a willful participant in joint activity with the State or its agents.

Id. at 152.

Under the caselaw applying Adickes, it is not entirely clear

4

what degree of state official involvement in the conduct of a private actor is necessary to warrant a conclusion of "joint action."  In one case, the Supreme Court found state officials sufficiently involved simply because they were mobilized to aid a private actor in securing his rights under state law.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 942 (1982) ("The Court of Appeals erred in holding that . . . 'joint participation' requires something more than invoking the aid of state officials to take advantage of [state law rights].").

In contrast, the Court in Dennis v. Sparks, 449 U.S. 24, 28 (1980), required more significant entanglement of state officials and the private actor marked by concerted action that goes beyond mere aid in securing state law rights.  Under the higher threshold of Dennis, state officials summoned to secure private rights under state law must be pursuing the ends of a conspiracy with the right holder before a sufficient link to the state is found.  Id. ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.  Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge. But here the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy.").

5

The case law does not indicate which of the two different standards, Lugar or Dennis, controls which sets of facts. See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 622 (1991) (finding that private litigant's peremptory challenge to potential juror constituted state action because state court officials assisted and enforced exercise of this state-created right; no discussion of conspiracy); see also Howerton v. Gabica, 708 F.2d 380, 383-84 (9th Cir. 1983) (applying Lugar standard to find sufficient state involvement where police facilitated landlord's eviction of tenant by accompanying landlord to premises). But see Casa Marie, Inc. v. Superior Court of Puerto Rico for the District of Arecibo, 988 F.2d 252, 259 (1st. Cir. 1993) ("It is obvious, nonetheless, that something more than mere resort to a state court is required to transform the moving party into a co-conspirator or a joint actor with the judge."). See also Alexis v. McDonald's Restaurants of Mass., 67 F.3d 341, 352 (1st Cir. 1995) (despite fact that police officer aided defendant in exercising property rights by removing plaintiff from premises, defendant was not acting "under color" of law because no "concerted action tantamount to substituting the judgment of a private party for that of police or allowing the private party to exercise state power").

For the reasons that follow, this court finds that the

6

conspiracy standard of <u>Dennis</u>, rather than the lower "aid and assistance" standard of <u>Lugar</u>, marks the appropriate threshold to determine whether Attorney Crisp was engaged in joint action with state officials.  Choice of the governing threshold of state official involvement sets the scope of federal judicial authority under section 1983.  The lower the threshold, the more private conduct will be swept under the rubric of "state action" redressable within the adjudicatory competence of federal courts.  Thus, resolution of this issue should begin with the broader principles governing the distribution of judicial authority between state and federal courts.

Settling the dispute of one individual against another has traditionally been considered at the core of state law's sphere of authority.  "The jurisdiction which Article 3 of the Constitution conferred on the national judiciary reflected the assumption that the state courts, not the federal courts, would remain the primary guardians of that fundamental security of person and property which the long evolution of the common law had secured to one individual as against other individuals."  <u>Monroe v. Pape</u>, 365 U.S. 167, 237 (1961) (Frankfurter, J., dissenting).  The Supreme Court has recognized that section 1983 was not intended by the enacting Congress to effectuate any broad departures from traditional boundaries between state and federal

7

authority.

> [S]ome questions of property, contract, and tort law are best resolved by state legal systems without resort to federal courts. . . . [This principle] respects the delicate balance between state and federal courts and comports with the design of § 1983, a statute that reinforces a legal tradition in which protection for persons and their rights is afforded by the common law and the laws of the States as well as the Constitution.

Albright v. Oliver, 510 U.S. 266, 284 (1994). Congress intended section 1983 as a limited cause of action that fell short of federalizing all state tort law. Accordingly, the scope of the state action requirement has been closely circumscribed in judicial application to maintain a viable distinction between legal wrongdoing that remains on the level of state tort law and that which rises to the level of constitutional tort. Lugar, supra, 457 U.S. at 935-37 ("Careful adherence to the state action requirement preserves an area of individual freedom by limiting the reach of federal judicial power. . . . A major consequence is to require courts to respect the limits of their own power as dictated against . . . private interests.").

However, the state action requirement is more than just a limiting principle, as it serves functions going beyond that of forestalling the penetration of otherwise boundless federal judicial authority. Specifically, the state action inquiry

8

focuses on the conditions which, if met, indicate that the matter is one of federal concern overcoming the traditional presumption that state courts retain primary competence to resolve disputes between co-citizens of the state.

Thus, on the other hand, the degree of state official involvement deemed necessary to turn private conduct into state action cannot be so low as to swamp the distinction between state torts and constitutional torts. And it cannot be so high that section 1983 lies silent when federal interests are in need of vindication. This leaves open the question of what conditions indicate the presence of a federal interest and thereby help mark the boundary between state torts and constitutional torts.

In other contexts, the Supreme Court has considered the inadequacy of available state remedies to redress the deprivation at issue as a condition relevant to whether a federal cause of action was intended by Congress or otherwise appropriate. For example, the Court in Monroe focused on the availability of adequate state remedies as relevant to whether Congress intended a section 1983 cause of action for conduct of state officers that went beyond authorization under state law. In holding that section 1983 reached such unauthorized conduct, the Court reasoned that Congress intended to "provide a federal remedy where the state remedy, though adequate in theory, was not

9

available in practice." Id. at 174. There were, in theory, state remedies available because the officer was acting outside legally conferred authority. But, according to the Court, such remedies appeared practically inadequate "because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced." Id. at 180. The Court concluded that Congress intended the section 1983 cause of action to extend to a state agent's unauthorized conduct (which the Court accordingly treated as state action) because available state remedies were practically inadequate.

Likewise, the Court in Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 394 (1971), considered the inadequacy of state remedies to redress deprivation of interests protected under the Fourth Amendment as relevant to setting the scope of federal judicial power. The Court reasoned that the invasion of privacy, at issue in the case, by a federal officer represented a more onerous and coercive species of legal wrong than the typical tortious invasion by a private citizen. State tort remedies, aimed only at the latter, were adjudged inadequate by the Court and replaced with a federal cause of action.

By analogy, similar considerations should guide resolution of the degree of state officer involvement necessary to transform "private conduct" into "state action" redressable under section

10

1983.  Without such guidance, that state action requirement is reduced to a "we know it when we see it" type of standard.  At the outset, state officials are implicated in every instance of an individual's invoking or exercising rights under state law.  Lugar, supra, 457 U.S. at 943 (Burger, J., dissenting).  In the shadows behind all right holders stands the state ready to mobilize its law enforcement machinery and deploy state officials to secure enjoyment of the benefits it confers by proclamation of law.  This fact forms an important background supposition against which much daily interaction takes place.  However, the fact of state officer involvement cannot be enough to treat private conduct as sufficiently gravid with state action.  Otherwise, the state action requirement would not serve its function of limiting the reach of federal judicial power, and every individual whose invocation of state law rights proved inimical to the federal rights of another would be a potential defendant in constitutional litigation under section 1983.  The state action requirement therefore is not whether state officers are involved, because that will always be affirmative; rather, it is a question of the degree of state officer involvement that implicates federal interests.  However, without any milestones or benchmarks, such as those provided by consideration of available state remedies, the inquiry becomes highly impressionistic.  To

11

avoid this, the reasoning of <u>Bivens</u> and <u>Monroe</u> can be relied upon in settling on the appropriate threshold of state official involvement. Accordingly, when state official involvement in private conduct reaches the degree necessary to render state remedies inadequate, any resulting deprivation carries sufficient indicia of federal concern that the conditions for the exercise of federal judicial authority are met. It is this degree of state official involvement that turns private wrongful conduct into a section 1983 violation. The Supreme Court has implied as much, holding that a factor is whether "the injury caused is aggravated in a unique way by the incidents of government authority." <u>Edmonson</u>, <u>supra</u>, 500 U.S. at 622.

When involvement of state officials in private conduct is at its lowest point on the spectrum, any resulting legal wrong is a core instance of a state tort, and available state remedies have been specifically tailored through evolution of statutory and common law to redress such wrongs. Where, as here, an individual claims that enjoyment of federal rights is jeopardized by another individual's invocation and exercise of state rights, he suffers no prejudice by a state court resolution of the lawfulness of defendant's conduct. This counsels a presumption against finding that private conduct influenced minimally by the state is state action on the theory that Congress did not intend

12

to supplant adequate and appropriate state remedies.

However, at a certain point, the level of state official entanglement in private conduct renders state tort law inadequate to redress resulting legal wrongs. State officials may become so entangled with private conduct that the private nature and origin of the conduct is obscured by the influence of state power. When such point has been reached, entanglement of state officials becomes the functional equivalent of delegation to a private party of coercive sovereign authority traditionally reserved for agents of the state. The Court in Bivens held that invasion of privacy by a federal officer is a different species of legal wrong than typical tortious invasions due to coercive authority vested in a federal officer and unavailable to the typical tortfeasor. Bivens, supra; Pape, supra, 365 U.S. at 193 (Harlan, J., concurring) ("One can agree . . . that Congress had no intention of taking over the whole field of ordinary state torts . . . without being certain that the enacting Congress would not have regarded actions by an official, made possible by his position, as far more serious than an ordinary state tort, and therefore a matter of federal concern.") The element of coercion likewise distinguishes the conduct of a private individual exercising delegated state power from the typical tort, and, for that reason, state remedies provide insufficient medicine for any

13

resulting deprivation of federal rights. For such conduct, the presumption that state courts retain primary authority to settle disputes between private parties is overcome, and the state action requirement envelops such conduct, clearing a space for federal law to reach out and effect justice. "The pretense of authority alone might seem to Congress sufficient basis for creating an exception to the ordinary rule that it is to the state tribunals that individuals within a State must look for redress against other individuals within that State." Pape, supra, 365 U.S. at 238.

Obviously, the degree of state influence rendering private conduct more coercive and onerous than typical tortious wrongs will vary with context. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961).

However, there are two contexts that warrant special treatment. In some contexts, state tort law may be bereft of the necessary categories to redress deprivation of particular interests protected by the Constitution. Some constitutional rights do not enjoy any counterparts in the interests traditionally protected at state common law. "There may be no damage remedy for the loss of voting rights or for the harm from

14

psychological coercion leading to a confession. . . .  It would indeed be the purest coincidence if the state remedies for violations of common-law rights by private citizens were fully appropriate to redress those injuries which only a state official can cause and against which the Constitution provides protection."  Pape supra, 365 U.S. at 196 n.5.  In addition, there may be no adequate state remedy because state law sanctions the grievance at issue.  Pape, supra, 365 U.S. at 249 (Frankfurter, J., dissenting) ("As to the adequacy of state-court protection of person and property, there seems a very sound distinction, as a class, between injuries sanctioned by state law (as to which there can never be state-court redress, if at all, unless (1) the state courts are sufficiently receptive to a federal claim to declare their own law unconstitutional, or (2) the litigant persists through a tortuous and protracted process of appeals . . . to this Court) and injuries not sanctioned by state law.").  In these contexts, state remedies are prima facie inefficacious, and a lower threshold should govern whether state official involvement reaches the level at which private conduct will be treated as state action.

Lugar's lower threshold of state involvement can be explained by the presence of both of the above factors which render state remedies prima facie inadequate.  Because available

15

state remedies provided inadequate redress, the Court found the private conduct constituted state action on a lower threshold showing of co-participation by state officials. The plaintiff in Lugar presented a three-count complaint. Count One, brought under section 1983, alleged that the state law procedures followed by defendant creditor in attaching plaintiff's property constituted an unconstitutional deprivation in violation of the Due Process Clause. Count Two, also brought under section 1983, alleged that the unconstitutional deprivation of property resulted from defendants' "malicious, wanton, willful, opressive [sic], [and] unlawful acts." Count Three was an overlapping claim for malicious prosecution brought under state tort law. The Court found state action to support Count One; however, it dismissed Count Two for lack of such. As both Counts One and Two arose out of the same facts, the degree of state officer involvement in the creditor's conduct remained constant for both counts. The question then is: What was the operative difference such that the Court found state official involvement in the creditor's conduct sufficient to support a finding of state action for Count One and not for Count Two?

First, Count One alleged conduct on the part of the creditor that was authorized under state law, whereas Count Two alleged unauthorized conduct. The Lugar court held that unauthorized

16

conduct could not be treated as state action. The Court in Monroe held that whether or not a state official's conduct was authorized under state law was irrelevant to the state action inquiry because state remedies, while theoretically available for unauthorized conduct, were practically inadequate. Under Lugar, when a state official and a private citizen co-participate in unauthorized conduct that violates another's rights, a federal remedy stands only against the state official, and not the private citizen, presumably because state remedies, while practically inadequate against the former, are both theoretically and practically available against the private actor. On the other hand, conduct authorized under state law, like that at issue in Count One in Lugar, raises concerns about the adequacy of state remedies regardless of which of the co-participants is sued. Thus, the authorized conduct in Count One was less likely to be adequately redressed at state law than was the unauthorized conduct of Count Two.

Second, in Lugar there were no available state common-law counterparts for Count One, while Count Two overlapped with established state torts. Count Two alleged "malicious abuse" of state procedure, and the state tort of malicious prosecution would be available to redress such legal wrong. However, Count One alleged invocation of state attachment procedures which, if

17

wrongful, would not fit any state tort categories. Since the debtor in Lugar retained possession of the attached property, application of the two most relevant torts of conversion and trespass to chattels was precluded, as both torts are against possession. Due to the gap in available and adequate state remedies for Count One, the Court was willing to find the state action requirement satisfied by a lower level of state officer involvement for Count One than for Count Two.

Readjusting the focus to the facts at issue here, it is on these grounds that the instant case is distinguishable from Lugar, despite surface similarities. Lugar and this case are factually similar. In Lugar, state officials were deployed to assist a private creditor in attaching property of his debtor. Likewise here, state officials were deployed to assist a creditor, defendant Crisp, in arresting his debtor, plaintiff MacFarlane. Unlike in Lugar, the plaintiff in this case has available overlapping claims under the common law for false imprisonment and malicious prosecution against the defendant. Even though Crisp's conduct was authorized under state law, that authority would be void if a state court entertaining tort actions against Crisp adjudged the sanctioning law as unconstitutional. In this case, state remedies are both theoretically and practically available, and MacFarlane suffers

18

no prejudice by state court resolution of the lawfulness of Crisp's conduct. Given overlapping state tort law remedies, Lugar's lower "aid and assistance" threshold of officer involvement is inappropriate here.

Applying the higher "conspiracy" standard of Dennis, plaintiff MacFarlane must show that his seizure under the civil arrest order resulted from conspiracy between defendant Crisp and the state officers involved. Only then will Crisp's otherwise private conduct be deemed state action, bringing him within section 1983's grasp.

A party seeking to wield a section 1983 cause of action against a private individual on grounds of an alleged conspiracy with state officials bears a higher burden of proof than is otherwise required to survive a motion brought under Rule 12(b)(6), Fed. R. Civ. P. On this point, the First Circuit has noted,

> In an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law . . . that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with reference to material facts.

Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977). If the complaint contains nothing more than conclusory allegations

19

rather than well-pled facts, dismissal under Rule 12(b)(6) is appropriate.  See Dahlberg, supra, 748 F.2d at 93 (dismissing complaint under Rule 12(b)(6) because "on the facts in the record [no claim could be made] . . . that [state officers] entered into a conspiracy or had a meeting of the minds with [the defendants]); Thompson v. Aland, 639 F. Supp. 724, 729 (N.D. Tex. 1986) (dismissing under Rule 12(b)(6) because complaint did not contain "factual allegations of conspiratorial conduct" beyond the "blanket accusation of conspiracy").

While the complaint states that defendant Crisp and the state officials conspired against him, it fails entirely to plead any facts tending to show the existence of a tainted agreement, such as a "backroom" meeting between the co-conspirators.  Since sufficient state involvement in Crisp's conduct has not been adequately alleged and supported, Crisp will not be treated as a state actor, and the section 1983 claim against him is dismissed under Rule 12(b)(6).


3.  Judge Peter Smith's Motion to Dismiss

Plaintiff MacFarlane also seeks damages under section 1983 against Judge Smith, who issued the civil arrest order regarding plaintiff.  Under well-settled law, a judge enjoys absolute immunity from a suit for money damages.  Mireles v. Waco, 502

U.S. 9, 9 (1991). One of the limited circumstances under which immunity will be pierced is when the judge acts "in complete absence of all jurisdiction." Id. at 12.

Plaintiff MacFarlane contends that Judge Smith issued the civil arrest order in absence of jurisdiction because he was, at that time, disqualified for partiality. Part I, article 35, of the state constitution provides that "it is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." New Hampshire courts have adopted a per se rule of judicial disqualification for particularly visible and obvious appearances of partiality or impropriety. State v. Martina, 135 N.H. 111, 120-21, 600 A.2d 132, 138 (1991) ("a per se rule of disqualification due to the probability of unfairness applies when the trier of fact has pecuniary interests in the outcome, when the trier of fact has become personally embroiled in criticism from a party before him, or when he has heard evidence in secret at a prior proceeding, or when he is related to a party"). Plaintiff argues that Judge Smith's alleged impartiality during the divorce proceedings disqualified him under this rule, and divested his jurisdiction over matters related to the divorce dispute. Plaintiff thus concludes that Judge Smith cannot shield himself from this section 1983 action because he acted in absence of jurisdiction and, for that reason,

21

is precluded from relying upon absolute judicial immunity. The issue, therefore, is whether disqualification for partiality strips a judge of otherwise proper jurisdiction such that the "acting in complete absence of all jurisdiction" exception to absolute judicial immunity applies.

There is some support in New Hampshire caselaw for the view that a judge disqualified for partiality lacks jurisdiction to preside over the case. In Russell v. Perry, 14 N.H. 153, 155 (1843), the New Hampshire Supreme Court said, "where a justice is interested . . . the statute prohibits him from acting judicially. These cases, then, are excepted out of the ordinary jurisdiction of a justice." Perry supports a conclusion that a judge disqualified for partiality takes subsequent action with respect to the case in absence of jurisdiction.

Actions taken in the absence of jurisdiction will not, however, subject a judge to liability unless such actions were taken in the *clear* absence of jurisdiction, which is a standard that forgives transgressions in borderline cases. The Supreme Court has directed that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Stump v. Sparkman, 435 U.S. 349, 356 (1978). "It is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising

22

the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1872). To demonstrate the narrowness of the exception to judicial immunity, the Court gave the following example to illustrate the distinction between clear absence of jurisdiction, which defeats the judge's immunity, and "excess of jurisdiction," for which the judge remains immune:

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction . . .; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would be acting in excess of his jurisdiction.

Sparkman, supra, 435 U.S. at 356 n.7 (citing Bradley, supra, 13 Wall. at 352). The Court in Sparkman counseled treating a judge's jurisdiction as sufficiently broad that he is only in limited cases deemed to act in its "clear absence." Under this understanding of the breadth of judicial immunity, this court finds that a judge's acting despite a disqualification for partiality does not constitute acting in "clear absence of jurisdiction," despite the dicta of the New Hampshire court in Russell that such "cases . . . are excepted out of the ordinary jurisdiction of a justice." Russell, supra, 14 N.H. at 155. If disqualification for partiality left a judge acting in "clear

23

absence of jurisdiction," judges would be saddled with litigation upon the mere allegation of partiality. Even unfounded allegations may require a trial before the judge's probity is conclusively established.

The Supreme Court in Mireles held that judicial immunity protects judges from such consequences, stating that "judicial immunity is an immunity from suit, not just the ultimate assessment of damages." Mireles, supra, 502 U.S. at 11. The Court continued, "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id. The existence of partiality, like bad faith or malice, cannot be ordinarily resolved "without engaging in discovery and eventual trial." Id. Thus, if shielding judges from litigation provides sufficient reason for the Court in Mireles to treat acts in bad faith as covered under judicial immunity, then, likewise, the risk of litigation provides sufficient reason to treat acts taken by a judge disqualified for partiality as absolutely immune from suit. Accordingly, this court holds that any actions taken by Judge Smith after his alleged disqualification for partiality were not taken in "clear absence of jurisdiction" and that he is absolutely immune from the section 1983 claim against him.

24

<u>Conclusion</u>

For the foregoing reasons, the motions to dismiss filed by defendants Smith (document 6) and Crisp (document 9) are herewith granted. The only remaining defendant in this case is Beryl Rich.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

November 27, 1996

cc:   James MacFarlane, pro se
      Daniel J. Mullen, Esq.
      Tanya G. Richmond, Esq.
      Cynthia L. Fallon, Esq.
      Ms. Beryl Rich
      Diane M. Gorrow, Esq.