Fiumara v. McCarthy                    CV-97-552-SD   08/18/98

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Joseph J. Fiumara

_____v.                                Civil No. 97-552-SD

Michael C. McCarthy;
Mary G. Fiumara;
Robert Towler;
Alan Roach


O R D E R

In this action pro se plaintiff Joseph J. Fiumara alleges that defendants Mary Marshall f/k/a/ Fiumara (Marshall), his ex-wife; Michael C. McCarthy, his wife's attorney; and Robert Towler and Alan Roach, Hampton police officers, violated his constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985. Currently before the court are Marshall's and McCarthy's motions to dismiss, to which Fiumara objects.


Background

Fiumara was involved in divorce proceedings when the events in question took place. He alleges that on October 30, 1994, police officers arrested him and charged him with violating a restraining order forbidding him from contacting his estranged wife. At the police station he surrendered his belongings, including the keys to his house. The police held Fiumara

overnight pending his arraignment. When he returned to his home at 32 Bride Hill Drive the following day, Fiumara found that someone had entered his home and removed items. Suspecting that his wife had entered the house, plaintiff telephoned the police department to report a burglary and request that the police send someone to investigate. Officer Towler told Fiumara the police would not investigate the incident because Attorney McCarthy had informed Officer Roach that there was a dispute regarding who had the right to live in the house. The police thus concluded it was a domestic matter. Officer Towler said he would call Attorney McCarthy and then return Fiumara's call. After not hearing from Officer Towler, Fiumara again called the police station and informed Officer Towler that he had a court order prohibiting his wife from entering the property. Officer Towler suggested that plaintiff bring to the station any documents he wished the police to consider.

## Discussion

### 1. Standard of Review

When a court is presented with a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), "its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal

2

pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears '"beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957))).

## 2. Domestic Relations

Marshall argues that the court lacks subject matter jurisdiction over this case, or in the alternative should abstain, because the matter involves domestic relations. The federal courts have recognized a domestic relations exception in cases that call upon a federal court to issue a divorce, alimony, or child custody decree. See Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992). This rule, however, is premised on the assumption that Congress did not intend diversity jurisdiction to extend to such matters. Thus some courts have limited the exception to diversity cases. See Rubin v. Smith, 817 F. Supp. 987, 991 (D.N.H. 1993) (citing Fernos-Lopez v. Lopez, 929 F.2d 20, 22 (1st Cir.), cert. denied, 502 U.S. 886 (1991)). "Other courts have deemed the exception applicable when federal-question jurisdiction exists, but then only when the federal court would become 'deeply involve[d] in adjudicating domestic matters.'" Fernos-Lopez, supra, 929 F.2d at 22 (quoting Thompson v. Thompson, 798 F.2d 1547, 1558 (9th Cir. 1986), aff'd, 484 U.S. 174 (1988)). In either case, the rule is inapplicable to this

3

case.  Like the plaintiff in Rubin, Fiumara alleges violation of his constitutional rights.  Furthermore, Fiumara does not challenge the state court's decree or call upon this court to divide the marital property.  Thus the case does not require this court to "become 'deeply involve[d] in adjudicating domestic matters.'" Id.

2. Section 1985

Fiumara alleges that the defendants violated 42 U.S.C. § 1985(3), which provides a cause of action when "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons . . . equal protection of the laws. . . ."  McCarthy, however, argues that Fiumara has not stated a claim under section 1985 because he has not alleged that McCarthy was motivated by an invidiously discriminatory animus.

The United States Supreme Court has held that the first clause of section 1985 (deprivation clause) applies to private conspiracies[1] only when "the conspiratorial conduct of which [the plaintiff] complains is propelled by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"

---

[1]Section 1985, unlike section 1983, applies to wholly private conspiracies as well as those involving state actors.

4

<u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)). The Court imposed this requirement to "limit the clause to its intended, constitutional purpose and prevent its use as a 'general federal tort law.'" <u>Libertad v. Welch</u>, 53 F.3d 428, 447 (1st Cir. 1995) (quoting <u>Griffin</u>, <u>supra</u>, 403 U.S. at 102). Although the Supreme Court activated this requirement in the context of a purely private conspiracy, the United States Court of Appeals for the First Circuit has extended this requirement to conspiracies involving state actors as well as completely private conspiracies. <u>See</u> <u>Aulson</u>, <u>supra</u>, 83 F.3d at 4.

The second clause of section 1985(3), known as the hindrance clause, has also been interpreted as limited to conspiracies based upon a discriminatory animus. "Although the Supreme Court has interpreted the first clause, called the 'deprivation clause,' of § 1985(3), it has never construed the hindrance clause, and in fact, has expressly left this question open." <u>Libertad</u>, <u>supra</u>, 53 F.3d at 446. In <u>Libertad</u>, the First Circuit considered whether the "hindrance clause" should be restricted to conspiracies motivated by a racial or other group-based motive. The First Circuit held that "this requirement should apply to the hindrance clause, lest the same phrase--"equal protection"--be construed differently in the same statute." <u>Id.</u> at 448 (citing <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263 (1993)). Thus, regardless of whether Fiumara's section 1985 claim alleges a private conspiracy or one implicating state actors and whether

5

it alleges a violation of the first or second clause, he must show that some racial or otherwise class-based invidious animus lay behind the conspirators' actions. As Fiumara's complaint fails to allege that any group-based animus propelled the alleged conspiracy, he has not stated a claim under section 1985.

### 3. Section 1983

Section 1983 extends liability only to persons who act under color of state law.[2] This limitation, however, does not exculpate all private actors from section 1983 liability. In some cases, "private actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of § 1983." Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996).

Although the United States Supreme Court has discussed the state action[3] requirement many times, it appears from the case law that "state action is not a unitary concept." Yeo v. Town of Lexington, 131 F.3d 241, 249 n.6 (1st Cir. 1997), cert. denied, 118 S. Ct. 2060 (1998). Determining when private persons act

---

[2]Section 1983 provides that
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . ."

[3]"'In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment.'" Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (quoting United States v. Price, 383 U.S. 787, 794 n.7 (1966)).

"under color of state law" is a fact-intensive inquiry that "may shift depending on context." Id. at 254. The Court has used a two-part approach to determine when a private actor can be held liable under section 1983. "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982). When the plaintiff alleges that violation of his or her constitutional rights was authorized by state law, step one of Lugar's test is satisfied. See id. at 940. When the conduct complained of is contrary to state law, however, the plaintiff must show greater state complicity lest section 1983 become capable of "federalizing all state tort law." MacFarlane v. Smith, 947 F. Supp. 572, 576 (D.N.H. 1996), aff'd, 129 F.3d 1252 (1st Cir. 1997). To pass step one of Lugar, an unauthorized deprivation must have been caused by a person for whom the state is responsible. See Lugar, supra, 457 U.S. at 940. This requirement is satisfied when the plaintiff alleges that there was a "'[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law . . . .'" Monroe v. Pape, 365 U.S. 167, 184 (1961) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Thus, in Lugar, a case arising from the prejudgment attachment of Lugar's property, the Court held that Lugar's allegation that the state statute providing the attachment procedure was unconstitutional stated a claim against

7

the party who had requested the attachment of his property. See Lugar, supra, 457 U.S. at 941. The Lugar Court, however, held that Lugar's allegation that the respondents misused the state-authorized procedure in violation of state law did not state a claim under section 1983. See id. at 940. Thus, to qualify as state action, a private act authorized by state law need only be done with assistance from state authorities. An act unlawful under state law, however, only becomes actionable under section 1983 when there was an illicit conspiracy between state authorities and the private party. See MacFarlane, supra, 947 F. Supp. at 575.

The second step of Lugar's two-part test requires that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Lugar, supra, 457 U.S. at 937. In applying the second part of this test, the court must consider "the extent to which the actor relies on governmental assistance and benefits, whether the actor is performing a traditional governmental function, and whether the injury caused is aggravated in a unique way by the incidents of governmental authority." Edmonson v. Leesville Concrete Co., 500 U.S. 614, 622 (1991).

Attorney McCarthy asks the court to dismiss the section 1983 claim against him for want of state action because he is not a state actor and did not engage in joint conduct with state actors such as could make him liable under section 1983. The court agrees. First, McCarthy's status as an officer of the court does

8

not make him into a state actor. Courts have held that even court-appointed attorneys who are paid by the state are not state actors. See Polk County v. Dodson, 454 U.S. 312, 320 (1981); Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir.), cert. denied, 479 U.S. 828 (1986). Thus McCarthy's membership in the bar alone cannot convert him into a state actor. As this case does not challenge a practice officially sanctioned by state law, McCarthy could only be liable under section 1983 if he conspired with state officials.

To state a claim for conspiracy under section 1983, the plaintiff need not meet a heightened pleading requirement, but cannot rely on conclusory allegations. See Crespo v. New York City Police Comm'r, 930 F. Supp. 109, 118 (S.D.N.Y. 1996). The First Circuit previously applied a heightened pleading standard to allegations of conspiracy. In a recent case, however, the Supreme Court unanimously rejected a heightened pleading standard applied to cases alleging municipal liability under section 1983, stating, "it is impossible to square the 'heightened pleading standard' . . . with the liberal system of 'notice pleading' set up by the Federal Rules." Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993). Although the First Circuit has not explicitly addressed the applicability of this holding to section 1983 cases alleging conspiracy, there is no basis for finding the Court's reasoning in Leatherman less applicable in this context. See Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 35 (1st Cir. 1996).

9

Nevertheless, to state a claim, the plaintiff must allege facts that if true would entitle him or her to relief; the plaintiff cannot rely on conclusory averments of conspiracy. See id. The court finds, giving the plaintiff every inference in his favor, that the facts he alleges do not evince a conspiracy between Attorney McCarthy and the police. To the contrary, while a conspiracy requires a meeting of the minds, the gravamen of Fiumara's charge against McCarthy is that he intentionally misled the police.

As Fiumara has not alleged that Marshall herself was a state actor, she can only be subject to liability under section 1983 if she conspired with state actors. Liberally construing the plaintiff's allegations, the court finds that he has stated a colorable conspiracy complaint against his former wife. Fiumara's factual allegations go beyond conclusory allegations of conspiracy. In particular, Fiumara apparently is suggesting that the police actively participated in and assisted Marshall's illegal entry into Fiumara's home by letting her use his keys and accompanying her to the house. Thus, at this juncture, Fiumara's section 1983 claim remains viable.

Conclusion

For the abovementioned reasons, the court grants Michael McCarthy's motion to dismiss (document 8) in full; Mary Marshall's motion to dismiss (document 7) is granted as to

plaintiff's 42 U.S.C. § 1985 claim, but denied as to his claim

under 42 U.S.C. § 1983.

     SO ORDERED.


                                                                _____
                                                                Shane Devine, Senior Judge
                                                                United States District Court

August 17, 1998

cc:   Joseph J. Fiumara, pro se
      John K. Bosen, Esq.
      John H. McEachern, Esq.
      William G. Scott, Esq.
      Peter G. Beeson, Esq.