**Ricardo SUAREZ–RODRIGUEZ, et al, Plaintiff(s),**

v.

**FEDERAL EXPRESS CORPORATION, Defendant(s).**

**CIVIL NO. 99–1199(JAG).**

United States District Court, D. Puerto Rico.

April 24, 2002.

Harry Anduze–Montano, San Juan, PR, for plaintiffs.

James D. Noel–High, McConnell Valdes, San Juan, PR, Matthew A. Vega, Memphis, TN, for defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

On October 16, 2000, defendant Federal Express Corp. ("FedEx") moved for partial summary judgment against plaintiffs Ricardo Suarez ("Suarez") and Lydia Alonso ("Alonso") (collectively "plaintiffs") (Docket No. 36). FedEx asks the Court to dismiss plaintiffs' violation of civil rights claims brought under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, and claims of violation of constitutional rights to privacy, dignity, integrity, and reputation. On March 5, 2001, plaintiffs filed an opposition (Docket No. 52). On August 23, 2001, the Court referred all motions to Magistrate Judge Gustavo A. Gelpí for a report and recommendation (Docket No. 63). On October 1, 2001, Magistrate Judge Gelpí recommended that the Court grant defendant's motion in its entirety and dismiss plaintiffs' §§ 1983 and 1985 and constitutional claims (Docket No. 66). On October 30, 2001, plaintiffs filed objections to the report and recommendation (Docket No. 69). Upon review of the objections, the Court adopts the report and recommendation.

## FACTUAL BACKGROUND

Suarez was employed by FedEx as a cargo handler. Suárez's responsibilities included loading and storing packages in airplanes and containers. (Docket No. 36, Exhibit 1) On February 11, 1998, Suárez, along with FedEx employees Esaúl Ortíz, Juan Carlos Rodríguez, and Zahira Nazario, stowed cargo on a plane destined to Tortola, Virgin Islands. (Docket No. 36, Exhibit 1 and No. 52, Exhibit 1).

On that same day, the apparent theft of a jewelry shipment valued at over $34,000 was reported. (Docket No. 36, Exhibits 2, 3, and 21). FedEx couriers in Tortola found an empty box shipped by Columbian Emeralds, which had apparently been ripped open. (Docket No. 36, Exhibit 19). FedEx's managerial and security employees in Tortola and San Juan launched an internal investigation of the incident.

On February 12, 1998, three of the cargo handlers assigned to the aircraft that departed from San Juan to Tortola were interviewed by Benigno Rivera, FedEx's Senior Security Specialist, who was responsible for security matters in all FedEx facilities in Puerto Rico. (Docket No. 52, Exhibit 1). During the interviews, Ms. Nazario and Mr. Rodríguez, who were outside the airplane, stated that there were no irregularities during the loading operation. Mr. Ortíz, the other cargo handler inside the airplane, also stated that the operation had been normal and uneventful. In an interview conducted on February 26, 1998, Mr. Ortíz changed his account to implicate Suárez. (Docket No. 52, Exhibit 2)

Mr. Rivera did not interview Suárez on February 11, 1998 because Suárez was unavailable. (Docket No. 52, Exhibit 1, p. 66). On February 13, 1998, Suárez arrived at Mr. Rivera's office but was advised to return at a later time. On February 24, 1998, Suárez was finally interviewed by Benigno Rivera, Gary Clemente, Paul Richardson, and Charles Adams, all of whom are part of defendant's security personnel and were conducting the investigation of the incident. During the meeting, Suárez denied any knowledge and/or participation in the alleged theft and told security personnel that the cargo operation had been uneventful and ordinary. (Docket No. 36, Exhibit 1 and Docket No. 52, Exhibit 1). On that same day, FedEx's security specialists, with Suarez's consent

1. Alejandro J. Cepeda–Díaz, a second year student at the University of Puerto Rico School of Law, assisted in the research and preparation of this opinion.

and cooperation, inspected his locker and his car despite the fact that he had denied any involvement in the February 11th incident. (Docket No. 52, Exhibit 1, pp. 55–62). FedEx's employees did not interview Suárez again after February 24.

On February 26, 1998, Agent Miguel Santiago of the Puerto Rico Police Department, went to FedEx's facilities in Carolina to investigate the February 11th incident after it had been reported by Benigno Rivera. (Docket No. 36, Exhibit 4). Agent Santiago and Mr. Rivera had not spoken or met prior to this occasion. (*Id.*). Agent Santiago interviewed Mr. Ortíz, discussed the complaint with Mr. Rivera, and, after consulting several times with a district attorney, concluded that there was enough evidence to establish probable cause that Suárez had been involved in the unlawful appropriation. (*Id.*). The following day, Agent Santiago arrested and handcuffed Suárez at FedEx's facilities in Carolina. Plaintiff was then taken to the Carolina Police Station where he was interrogated. Suárez was released that same day after Agent Santiago consulted with a district attorney who advised him that he needed more evidence to detain Suárez. (*Id.*, p. 5).

On February 27, 1998, Troy Maxey, Benigno Rivera, and other FedEx agents met Alonso at Maxey's office. Alonso, another FedEx employee, had an intimate relationship with Suárez and lived with him at the time. At the meeting, Alonso was asked if she had any knowledge about the February 11th incident and the whereabouts of the missing jewelry. (Docket No. 36, Exhibit 5). Alonso denied having knowledge of the incident or the missing jewelry. One of FedEx's employees accompanied Alonso to her desk and searched her make-up bag while she looked for her car keys. (*Id.*).

Given some of the security problems that FedEx was facing at its Carolina location and the nature of FedEx's business, the company had several security measures in place, including policies that permitted FedEx's security employees to search anyone entering the premises. (Docket No. 36, Exhibits 15 and 20). The employee handbook, which plaintiffs received, states: "Security procedures are in effect to protect you and your property and safeguard the property of the Company and its customers. The inspection of packages, company lockers, carrying cases, and vehicles may be necessary. Your full cooperation is required in this effort to protect employees, facilities, and packages." (Docket No. 36, Exhibit 6, pp. 94–95). In addition, FedEx's People Manual for Puerto Rico and several notices posted around its facilities alert employees and visitors to the possibility that their person, belongings, and/or vehicles may be inspected upon entering and leaving company premises. (Docket No. 36, Exhibits 7, 12, 13, 14, and 20).

Suárez was suspended and ultimately fired from FedEx. Ortíz was also suspended and later terminated from FedEx for withholding information relative to the February 11th incident. No further action was ever taken against Suárez for the missing cargo in the Tortola aircraft.

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, where pertinent, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R.Civ.P. 56(c); *See Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for the factual controversy to prevent summary judgment, the contested fact must be "material" and the dispute over it must be "genuine." "Material" means that a contested fact has the potential to change the outcome of the suit under the governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is "insufficient to defeat a properly supported motion for summary judgment." *Id.*, at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

To make this assessment in a given case, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). When carrying out that task, the court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *See Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

**B.** *Standard for Reviewing a Magistrate Judge's Report and Recommendation*

A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B) (1993); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the Magistrate's report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. 28 U.S.C. § 636(b)(1). Since plaintiffs have filed timely objections to the Magistrate's report and recommendation, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater*, 8 F.Supp.2d 152, 154 (D.P.R. 1998).

**C.** *Plaintiffs' objections to the Magistrate Judge's Report and Recommendation.*

Most of plaintiffs' objections address the Magistrate Judge's use of the word "theft"

throughout the report and recommendation. It is their contention that its use implicates Suárez in the alleged robbery even though he was never charged in relation to the incident of February 11, 1998. The argument is irrelevant for the disposition of this motion. It is better suited to address plaintiffs' claims of malicious prosecution and illegal detention, which, were not included in the motion for partial summary judgment and still stand before the Court.

■ Plaintiffs argue that the Magistrate Judge's recommendation should not be adopted because, as they allege, a prearrangement existed between FedEx and the police which constitutes state action for the purposes of § 1983. Plaintiffs argue that a familiarity existed between FedEx and the Police which led to an understanding to arrest Suárez in violation of his civil rights. Plaintiffs have failed, however, to proffer any evidence in support of this claim. That FedEx had dealt with Carolina Police agents before the incident of February 11th, or that they had consulted with Police agents as to ongoing investigations is not proof of a prearrangement or of a conspiracy. It is unsupported speculation which can be safely ignored by the Court. *See Medina Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d at 8. As the record shows, it was Agent Santiago who decided to arrest Suárez after having consulted several times with the district attorney. FedEx's involvement in the decision to arrest Suárez was limited to reporting the theft, as any citizen who is the victim of a crime would have done.

Plaintiffs further allege that Mr. Ortíz changed his version of the day's events to implicate Suárez because he was coerced by FedEx's security personnel. The fact that Mr. Ortíz was later fired from FedEx for withholding information about the February 11th incident eliminates all credibility from plaintiffs' argument. Even if Mr. Ortíz had been coerced, plaintiffs' argument does not prove that FedEx acted under color of law or that a prearrangement or conspiracy existed between FedEx and the Police. The First Circuit has stated that,

> In an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law ... that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with reference to material facts.

*Slotnick v. Staviskey,* 560 F.2d 31, 33 (1st Cir.1977); *See also MacFarlane v. Smith,* 947 F.Supp. 572, 579 (D.N.H.1996). Inasmuch as plaintiffs have failed to meet this burden, dismissal of §§ 1983 and 1985 claims is appropriate.

■ Plaintiffs further urge the Court not to adopt the Magistrate Judge's report because it raises arguments and conclusions in the light most unfavorable to them (Docket No. 69 at 6). When a motion for summary judgment is before the Court, it must be viewed in the light most favorable to the nonmoving party. This does not mean, however, that the Court must rule in that party's favor.

Finally, plaintiffs object to the report on the allegation that FedEx, in collaboration with local police, acted in utter disregard of Suárez's interests in fair and reasonable procedures and in utter disregard for the injuries vested upon him with a lack of basic diligence and care. These arguments are irrelevant for the disposition of this motion and are better suited to address plaintiffs' claims of malicious prose-

cution and illegal detention which still stand before the Court.

## CONCLUSION

For the foregoing reasons, the Court adopts the Magistrate Judge's report and recommendation. FedEx's motion for partial summary judgment is GRANTED. Plaintiffs' §§ 1983 and 1985 as well as the other constitutional claims are dismissed. Partial judgment shall be entered accordingly.

IT IS SO ORDERED.